RECEIVED

JUL 1 3 2005

ROBERT H. SHEMWELL, CLERK
WESTERN DISTRICT OF LOUISIANA
LAFAYETTE, LOUISIANA

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAFAYETTE-OPELOUSAS DIVISION

| | |
|---|---|
| David A. Foreman | Civil Action No. 6:04-820 |
| versus | Judge Tucker L. Melançon |
| Kyle J. Grammar and Chet Morrison Contractors, Inc. | Magistrate Judge C. Michael Hill |

**MEMORANDUM RULING**

Before the Court is a Motion for Summary Judgment, filed by defendant/third party plaintiff, Chet Morrison Contractors, Inc. [Rec. Doc. 23], an opposition thereto filed by third party defendant, Certain Underwriters at Lloyd's, London [Rec. Doc. 27] and a reply memorandum filed by Chet Morrison Contractors, Inc. [Rec. Doc. 30]. For the reasons that follow, the motion will be denied in part and granted in part.

*I. Background*

This motion arises from an action by plaintiff, David A. Foreman, for injuries he allegedly sustained on December 13, 2003, when a 21 foot Avenger boat driven by Kyle Grammar collided with plaintiff's boat on Belle Isle, a 4,000 acre tract of land located in St. Mary Parish, Louisiana used for recreational hunting purposes. At the time of the accident Grammar was an operations manager for Chet Morrison Contractors, Inc., a Louisiana Corporation and oilfield contractor ("Chet Morrison"). Several years prior to the accident, Chet Morrison entered into a lease agreement with Gruy Petroleum Management Company ("Gruy Petroleum"), the owner of Belle Isle, in order to jointly use the property for

1

hunting purposes. Chet Morrison represents that it and Gruy Petroleum intended to separately incorporate Belle Isle Hunt Club, L.L.C., however, at the time of the accident such action had never been taken. Foreman filed the instant action against Grammar and Chet Morrison. Thereafter, Chet Morrison filed a third party demand against Certain Underwriters at Lloyd's, London ("Lloyd's") for defense and indemnity under a policy of insurance issued by Lloyd's to the Alabama Forestry Owner's Association ("AFOA") naming as the insured, "Belle Isle Hunt Club, L.L.C."

*II. Standard of Review*

A motion for summary judgment shall be granted if the pleadings, depositions, and affidavits submitted show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. *Fed. R. Civ. P. 56*. When a party seeking summary judgment bears the burden of proof at trial, it must come forward with evidence which would entitle it to a directed verdict if the evidence were uncontroverted at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986). As to issues which the non-moving party has the burden of proof at trial, the moving party may satisfy this burden by demonstrating the absence of evidence supporting the non-moving party's claim. *Celotex Corp.*, 477 U.S. at 324.

Once the movant produces such evidence, the burden shifts to the respondent to direct the attention of the court to evidence in the record sufficient to establish that there is a genuine issue of material fact requiring a trial. *Celotex*

*Corp.*, 477 U.S. at 322-23. The responding party may not rest on mere allegations made in the pleadings as a means of establishing a genuine issue worthy of trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-49 (1986). If no issue of fact is presented and if the mover is entitled to judgment as a matter of law, the court is required to render the judgment prayed for. *Celotex Corp.*, 477 U.S. at 322; *Fed. R. Civ. P. 56(c)*. Before it can find that there are no genuine issues of material fact, however, the court must be satisfied that no reasonable trier of fact could have found for the non-moving party. *Id.*

### III. Analysis

In its motion, Chet Morrison represents that it negotiated with Gruy Petroleum for the joint use of the property for hunting purposes. *Motion for Summary Judgement*. Chet Morrison further represents that it and Gruy Petroleum intended to incorporate their hunting club activities by forming an limited liability company known as "'Belle Isle, L.L.C., Hunt Club' and/or 'Belle Isle, L.L.C.'"; however, the formal incorporation of the hunting club never occurred. *Id.* Chet Morrison also represents that John DeBlieux, Chet Morrison's Risk manager, joined the Alabama Forest Owners Association ("AFOA") on behalf of Chet Morrison, in order to purchase liability insurance for the hunting lease. *Id.* In that vein, on August 13, 2003, Certain Underwriters at Lloyd's, London issued an insurance policy indicating that the certificate holder was "John DeBlieux on behalf of 'Belle Isle, L.L.C., Hunt Club', whose address is in Houma, Louisiana" ("Policy"). *Id. at Exh. 5, Lloyd's Policy, #HLN03B0219*. The AFOA's hunting

lease liability insurance renewal notice for the years 2003 to 2004 indicates that the insured is "'John DeBlieux, Belle Isle, L.L.C., Hunt Club, P.O. Box 3301, Houma, La. 70361.'" *Id. at Exh. 4.* For the years 2002 through 2004, Chet Morrison paid all of the fees for the hunting club as well as the Lloyd's Policy premiums. *Id at Exhs. 7 & 10.*

In its motion for summary judgment, Chet Morrison asserts that the instant claim is covered under the Policy for the following reasons: (1) Chet Morrison is an insured under the Policy because it operated its Belle Isle hunting club under the names, "Belle Isle, L.L.C., Hunt Club" and/or "Belle Isle, L.L.C." and paid the Policy premiums on company checks for the years 2002 to 2003 and 2003 to 2004; (2) the Hold Harmless Agreement entered into between Chet Morrison, Belle Isle, L.L.C., and Kyle Grammar constituted an "insured contract" as defined under the Policy such that the Watercraft Exclusion does not apply in this case; and, (3) that it is entitled to damages, expenses and attorney fees under La. R.S. 22:1220 and 22:658 for Lloyd's refusal to defend and indemnify it.

Lloyd's contends that its Policy provides coverage only to hunting clubs, and because Chet Morrison is a Louisiana Business Corporation not a hunting club, it is not entitled to coverage under the Policy. Lloyd's argues in the alternative that if Chet Morrison is deemed an insured under the Policy, there is no coverage for the claims asserted by plaintiff because: (1) the Policy excludes coverage for all damages arising out of the boat operated by Grammar; (2) the Hold Harmless Agreement between Chet Morrison and Grammar is not an

"insured contract" under the Policy's exception to the Watercraft Exclusion; (3) the Policy provides only excess coverage over any other insurance available to Chet Morrison, and; (4) Chet Morrison is not entitled to penalties or attorney's fees under La. R.S. 22:1220 or 22:658. The Court will address each of the parties' contentions as follows.

### A. Insurance Coverage

#### 1. Whether Chet Morrison Is An Insured Under the Policy

Chet Morrison contends that it formed "Belle Isle, L.L.C., Hunt Club" with Gruy Petroleum for the purpose of conducting recreational hunts on Belle Isle. Chet Morrison further contends that its risk manager, John DeBlieux, is the certificate holder of the Policy and Policy renewal notice on behalf of "Belle Isle, L.L.C., Hunt Club," and on both documents DeBlieux's address is listed as "P.O. Box 3301, Houma, Louisiana" which is the company's address. Thus, Chet Morrison maintains, the Court should find that it is an insured under the Policy.

Lloyd's asserts that the Policy provides coverage for various hunting clubs as well as the landowners leasing the property to the hunting clubs. Because Chet Morrison is a Louisiana Business Corporation not a hunting club, Lloyd's maintains that Chet Morrison is not an insured under the Policy. Lloyd's further asserts that if Chet Morrison believed it qualified as a hunting club, it would have applied for insurance in its own name rather than requiring its risk manager, DeBlieux, to apply for the insurance. Without qualifying as a hunting club, Lloyd's contends that Chet Morrison is merely a permissive user of the property

and could not be covered by the Policy as a hunting club. Lloyd's asserts that Chet Morrison cannot now be substituted for Belle Isle, L.L.C., Hunt Club, the actual insured under the Policy, as such action would be a reformation of the insurance policy, which Chet Morrison cannot establish.

Chet Morrison argues that Belle Isle, L.L.C., Hunt Club was an unincorporated association at the time of the accident in question, and therefor, coverage is owed under the Policy provision which defines a hunting club as "[a]n organization other than a partnership, joint venture or limited liability company." Chet Morrison also argues that the AFOA and Lloyd's knew that Chet Morrison was the actual insured because Chet Morrison paid the insurance premiums on Chet Morrison company checks for the years 2002 to 2003 and 2003 to 2004, as well as the AFOA landowner membership dues, annual landowner processing fees, hunting club processing fees, and acreage fees and, John DeBlieux, as Chet Morrison's risk manager and Belle Isle, L.L.C., Hunt Club organizer, was the applicant for the Policy and held the insurance certificate.

Section II of the Policy, "Who is an Insured," provides in pertinent part as follows:

If you are designated in the declarations as:

\* \* \*

c. A limited liability company, you are an insured. Your members are also insured, but only with respect to the conduct of your business. Your managers are insureds, but only with respect to their duties as your managers.

6

d. An organization other than a partnership, joint venture or limited liability company, you are an insured. Your "executive officers" and directors are insureds, but only with respect to their duties as your officers or directors. Your stockholders are also insured, but only with respect to their liability as stockholders.

* * *

2. Each of the following is also an insured:

a. Your "volunteer workers" only while performing duties related to the conduct of your business...

* * * *

Lloyd's Policy, Section II.

The Policy designates Hunting Clubs as Named Insured as follows:

> IT IS AGREED AND UNDERSTOOD THAT THE HUNTING CLUBS ARE NAMED INSUREDS ON PROPERTY DESIGNATED AND ON FILE WITH THE COMPA NY.
>
> IT IS FURTHER AGREED AND UNDERSTOOD THAT ADDITIONAL CLUBS AND PROPERTY MUST BE REPORTED TO THE COMPANY WITHIN 30 DAYS FROM EXECUTION OF THE HUNTING LEASE AGREEMENT. Lloyd's Policy, "Named Insured Endorsement.

"An insurance policy is an agreement between the parties and should be interpreted using ordinary contract principles. The parties' intent, as reflected by the words of the policy, determine the extent of coverage. Such intent is to be determined in accordance with the general, ordinary, plain and popular meaning of the words used in the policy, unless the words have acquired a technical meaning. If the policy wording at issue is clear and expresses the intent of the parties, the agreement must be enforced as written." *Ledbetter v. Concord General Corp.*, 665 So.2d 1166, 1168, *judgment amended by* 671 So.2d 915 (La. 1996)(citations

omitted). Words and phrases used in an insurance policy are to be construed using their plain, ordinary and generally prevailing meaning, unless the words have acquired a technical meaning. *Edwards v. Daugherty*, 883 So.2d 932, 940-941 (La. 2004).

The relevant Policy documents provide the following information. The Policy at bar identifies the named insured as "Alabama Forest Owners Association Forestry Service, Inc. Landowners and Hunting Clubs," and provides coverage for "occurrences arising from activities and operations of hunt clubs and its members, guests, invitees, agents or employees on acreage leased to hunt club by lessor...." *Lloyd's Policy, Declaration.* The Lloyd's application form states that: "Hunting Lease Liability Insurance is available to each member of the AFOA on land owned by the member which is leased to a hunting club." *Oppo. to Summary Judgment, Exhs. E & F.* DeBlieux identified himself as the Club Representative in the Application for Use of AFOA's Hunting Lease Liability Group Insurance Policy and in the Renewal Notice Application and did not mention the name of Chet Morrison. *Application for Hunting Lease Liability Group Insurance Policy; Renewal Notice.* Also, DeBlieux identified the name of the hunting club in the applications as "Belle Isle, L.L.C., Hunt Club" and "Belle Isle, L.L.C.," even though the hunting club had not been formed. *Depo. of DeBlieux, pp. 31-34.*

With respect to Chet Morrison's argument that Lloyd's cannot claim that it did not know of Chet Morrison's existence, the record provides that DeBlieux testified that the name "Chet Morrison" was never disclosed to Lloyd's as being

8

the actual insured. *Id. at p. 34.* DeBlieux further testified, however, that he did not believe it was necessary to disclose that Chet Morrison was the actual owner of the Policy because the insurance premiums were paid on Chet Morrison company checks. *Id.* Lloyd's does not dispute that Chet Morrison also represents that it paid "the AFOA landowner membership dues, landowner processing fees, hunting club fees, hunting club processing fees, acreage fees, and premiums on Chet Morrison checks." *Reply Memo.*

"Under the doctrine of equitable reformation, Louisiana law permits a court to reform the written language of an insurance policy to conform with the original intentions of the parties. The party seeking reformation bears the burden of proving, by clear and convincing evidence, that a mutual mistake has been made. Policies should also be reformed if they fail to reflect the mutual intentions of the parties due to a unilateral mistake made by the insurer or his agent in drafting the agreement. Reformation is warranted only, however, to embody the parties' mutual intent; otherwise, the courts would, in effect, be rewriting the contract." *Motors Ins. Co. v. Bud's Boat Rental, Inc.*, 917 F.2d 199, 203-204 (5th Cir. 1990). In this case, the named insured on the Policy is the AFOA with coverage available to associated hunting clubs. As "Chet Morrison" is not a hunting club associated with the AFOA, in order for Chet Morrison to assert coverage under the Policy Chet Morrison must establish that the Policy should be reformed to conform with the intentions of the parties. Based on the record before it, the Court finds there exists genuine issue of material fact as to whether or not Chet Morrison was the

intended insured under the Policy. Accordingly, Chet Morrison's motion to find that it is an insured under the Policy will be denied.

## 2. *Policy Exclusions*

In the event it is determined that Chet Morrison is an insured under the Policy, Lloyd's argues in the alternative that Chet Morrison should be denied coverage under the Policy's Watercraft Exclusion, which provides in pertinent part:

2. EXCLUSIONS

This insurance does not apply to:

\* \* \*

g. Aircraft, Auto Or Watercraft

"Bodily injury" or "property damage" arising out of the ownership, maintenance, use or entrustment to others of any air craft, "auto" or watercraft owned or operated by or rented or loaned to any insured. Use includes operation and "loading or unloading."

This exclusion applies even if the claims against the insured allege negligence or other wrongdoing in the supervision, hiring, employment, training, or monitoring of others by that insured, if the "occurrence" which caused the "bodily injury" or "property damage" involved the ownership, maintenance, use or entrustment to others of any aircraft, "auto" or watercraft that is owned or operated by or rented or loaned to any insured.

This exclusion does not apply to

(1) A watercraft while ashore on premises you own or rent;

(2) A watercraft you do not own that is:

    (a) Less than 26 feet long; and

    (b) Not being used to carry persons or property for a charge;

\* \* \*

(4) Liability assumed under any "insured contract" for the ownership, maintenance or use of aircraft or watercraft;

\* \* \* \*

Lloyd's Policy, Section I.

The Policy also contains a "BOATS" Endorsement, which changes the Watercraft Exclusion in the foregoing as follows:

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART
SCHEDULE

Description of Watercraft:

Boats - under 19' (feet); outboard motors 25 hsp or less

Additional Premium:

(If no entry appears above, information required to complete this endorsement will be shown in the Declarations as applicable to this endorsement.)

1. Exclusion g. of COVERAGE A (Section I) does not apply to any watercraft owned or used by or rented to the insured shown in the Schedule.

2. WHO IS AN INSURED (Section II) is amended to include as an insured any person or organization legally responsible for the use of any such watercraft you own, provided the actual use is with you permission.

Lloyd's Policy, "Boats" Endorsement.

Lloyd's argues that in the event Chet Morrison is determined to be an insured under the Policy, then the aforesaid Policy language excludes coverage for the boat operated by Grammar as the boat was either owned by or loaned to Chet Morrison and does not meet the exception to the Watercraft Exclusion as changed

by the Boats Endorsement since it was twenty-one feet long with a 200 horsepower motor.

Chet Morrison does not dispute Lloyd's argument as to the Watercraft Exclusion and the Boats Endorsement, but asserts that it is covered under exception (4) of the Watercraft Exclusion. Chet Morrison contends that because Chet Morrison, Belle Isle, L.L.C., and Grammar entered into a Hold Harmless Agreement, which was in effect at the time of the accident and constituted an "insured contract" under the terms of the Policy, Chet Morrison is expressly exempt from the Policy's Watercraft Exclusion.

Exception (4) of the Policy clearly states that the Watercraft Exclusion does not apply to "liability assumed under an 'insured contract' for the ownership, maintenance or use of aircraft or watercraft." Lloyd's argues, however, that the Hold Harmless Agreement between Chet Morrison, Belle Isle, L.L.C., and Grammar does not qualify as an "insured contract" under the terms of the Policy. Lloyd's cites Section V of the Policy which provides in pertinent part that "insured contract" means:

\* \* \*

    f.    That part of any other contract or agreement pertaining to your business (including an indemnification of a municipality in connection with work performed for a municipality) under which you assume the tort liability of another party to pay for 'bodily injury' or 'property damage' to a third person or organization. Tort liability means a liability that would be imposed by law in the absence of any contract or agreement. Lloyd's Policy, Section V.

Lloyd's contends that the clear language of the Policy reflects that the type of agreement intended to be covered as an "insured contract" is a business agreement in which the insured is required to assume the liability of another party as part of a business agreement for the provision of goods or services, and Chet Morrison's "stand alone, unilateral indemnity agreement" cannot constitute an "insured contract."

While Lloyd's provides no jurisprudence in support of its position, it is undisputed that the purpose of the Hold Harmless Agreement was to protect Grammar, Chet Morrison's employee, while using his own boat in furtherance of Chet Morrison's business by allowing its clients to hunt on Belle Isle. Moreover, as the Hold Harmless Agreement expressly covers losses arising from the indemnitee's own negligence and shows mutual intent to provide indemnification in unequivocal terms, it is a valid indemnity agreement under Louisiana law. *Amoco Production Co. v. Forrest Oil Corp.*, 844 F.2d 251, 253 (5th Cir. 1988)(citing *Polozola v. Garlock*, 343 So.2d 1000, 1003 (La.1977)).

Thus, as the Hold Harmless Agreement constitutes "any other contract or agreement pertaining to your business ... under which you assume the tort liability of another party to pay for 'bodily injury' or 'property damage' to a third person or organization," it is an "insured contract" under the terms of the Policy. In the event Chet Morrison is determined to be a named insured under the Policy, the Watercraft Exclusion does not apply.

*3. Excess Insurance Endorsement*

13

Lloyd's also contends in the alternative that in the event Chet Morrison is found to be an insured under the Policy, the Excess Endorsement within the Policy makes any insurance coverage under the Policy excess to Chet Morrison's primary liability insurance.[1] The Policy's Excess Insurance Endorsement states:

> This insurance is excess over any other insurance available to the Lessee, guest of the Lessee, or club members of the Lessee.
> Lloyd's Policy, Excess Insurance Endorsement.

The record supports that Steadfast Insurance Company issued a policy to Chet Morrison which was in effect at the time that the instant accident occurred. *Steadfast Insurance Co. Policy; Depo. Of DeBlieux, pp. 43-47.* In its reply memorandum, Chet Morrison does not dispute Lloyd's representation that "Steadfast has accepted coverage for [the instant] claim and is currently providing Chet Morrison with a defense for [the instant] claim, without any reservation of rights," but contends that because it did not raise the issue of the Excess Endorsement in its motion for summary judgment, the issue is premature. As the issue was raised by Lloyd's in its opposition memorandum to which Chet Morrison filed a reply[2], it is properly before the Court and Chet Morrison obviously had notice and opportunity to respond to this issue. *Love v. National*

---

[1] Lloyd's represents that Chet Morrison is covered by a policy of primary liability insurance issued by Steadfast Insurance Company, the limits of which are $1,000,000.00 per occurrence. Lloyd's further represents that Steadfast has accepted coverage for this claim and is currently providing Chet Morrison with a defense for the instant claim without any reservation of rights. In the event the Court finds coverage under the Policy, Lloyd's asserts in the alternative that any such coverage is excess over the Steadfast Policy as provided in the Lloyd's excess insurance endorsement.

[2] Chet Morrison filed a Motion For Leave to File Reply Memorandum on March 17, 2005 [Rec. Doc. 28] which the Court granted on March 18, 2005 [Rec. Doc. 29].

*Medical Enterprises*, 230 F.3d 765, 770-71 (5th Cir.2000)("[I]t is well-settled that a district court may grant summary judgment sua sponte, so long as the losing party has ten days notice to come forward with all of its evidence in opposition to summary judgment."). However, in an effort to give Chet Morrison the opportunity to file a reply if it so desires, the Court will allow Chet Morrison 10 days from the date of entry of this judgment to file any additional response it deems *necessary or appropriate* as to the Excess Endorsement in the Policy, and Lloyd's may file a reply within 10 days of receipt of Chet Morrison's response.

### *B. Penalties and Attorney's Fees*

Chet Morrison contends that the Court should grant it an award of penalties and attorney's fees against Lloyd's under Louisiana Revised Statute §22:1220 and §22:658(B)(1) for failure to pay the instant claim. Section 22:1220(B) provides in pertinent part:

> Anyone of the following acts, if knowingly committed or performed by an insurer constitutes a breach of the insurer's duties imposed in Subsection A;
> ...
> (5) Failing to pay the amount of any claim due any person insured by the contract within sixty days after receipt of satisfactory proof of loss from the claimant when such failure is arbitrary, capricious or without probable cause. La. R.S. 22:1220(B)(5).

Section 658(B)(1) provides:

> Failure to make such payment within 30 days after receipt of such satisfactory proofs and demand therefore, as provided in La. R.S. 22:658(A)(1) ... when such failure is found to be arbitrary, capricious or without probable cause, shall subject insurer to a penalty, in addition to the amount of loss, of ten percent damages on the amount to be found to be due from the insurer to the insured or one thousand dollars, whichever is greater, payable to the insured ... together with

15

all reasonable attorney fees for the prosecution and collection of such loss. La. R.S. 22:658(B)(1).

The claimant seeking to recover under these two statutes has the burden of establishing three things: (i) that the insurer received a satisfactory proof of loss, (ii) that the insurer failed to pay the claim within the applicable statutory period, and (iii) that the insurer's failure to pay was arbitrary and capricious. *Boudreaux v. State Farm Mut. Auto. Ins. Co.*, 896 So.2d 230, 233 (La.App. 4 Cir. 2/2/05) (citing *McDill v. Utica Mutual Ins. Co.*, 475 So.2d 1085, 1089 (La.1985)). The question of whether an insurer acted with bad faith turns on the facts and circumstances of each case, and it is a "prerequisite to any recovery" that the court make a finding that the insurer acted in bad faith, or acted arbitrarily, capriciously and without probable cause. *Block v. St. Paul Fire & Marine Ins. Co.*, 742 So.2d 746, 752 (La. 1998).

Based on the foregoing analysis of the issues related to Chet Morrison's claim under the Policy as well as the applicable law, the Court will deny Chet Morrison's motion to award penalties or attorney's fees.

*Conclusion*

Since there exists genuine issue of material fact as to whether or not the Policy should be reformed to provide coverage to Chet Morrison, the motion for summary judgment will be denied as to whether Chet Morrison is an insured under the Policy. In the event Chet Morrison is found to be an insured under the Policy, the Watercraft Exclusion does not apply to exclude coverage for liability in this case and Chet Morrison's motion will be granted as to this issue. Chet Morrison's

motion for sanctions and attorney's fees under Louisiana Revised Statute §22:1220 and §22:658(B)(1) will be denied. Finally, as to Lloyd's assertion that any claim under the Policy is subject to the Excess Exclusion, Chet Morrison is to file any response within ten (10) days of entry of this ruling and judgment, and Lloyd's is to file any reply within ten (10) days of receipt of Chet Morrison's response. In the event Chet Morrison fails to file a response, the Court will grant judgment in favor of Certain Underwriters at Lloyd's, London, finding excess coverage only under the Policy, if any there be.